E-FILED
Thursday, 27 September, 2018  10:53:25 AM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Central District of Illinois

FILED

SEP 2 7 2018

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.   18-MJ- 6088 |
| | ) |
| | ) |
| KEAMBRA L. NUNN | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 22, 2018_____ in the county of _____Peoria_____ in the

_Central_ District of _____Illinois_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 United States Code, Section 1001(a)(2) | did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation to a federal law enforcement officer |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_s/Kevin D Brown_
*Complainant's signature*

Kevin D. Brown, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     09/27/2018

_s/Jonathan E Hawley_
*Judge's signature*

City and state:         Peoria, Illinois

Jonathan E. Hawley, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT
## IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Kevin Brown, (hereinafter "Your Affiant"), do hereby depose and state the following:

1.      Your Affiant is a Special Agent of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF").  Your Affiant has been a law enforcement officer since April 2009.

2.      This affidavit is based upon information I have gained from my investigation, my training and experience, as well as information provided by other law enforcement agents involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

## RELEVANT STATUTE

3.      This investigation concerns alleged violations of 18 U.S.C. § 1001(a)(2) which prohibits, in any matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully making any materially false, fictitious, or fraudulent statement or representation.

1

## PROBABLE CAUSE

4.    On July 29, 2018, Terrill RICKMON was arrested for the offense of felon in possession of a firearm. RICKMON was subsequently indicted by a federal grand jury in the Central District of Illinois for the offense of possession of firearm by a prohibited person in violation of 18 U.S.C. § 922(g), pending criminal case No. 18-10046 (Peoria Division).

5.    According to an ATF firearms trace, the firearm recovered during RICKMON's arrest, a SCCY Industries Model CPX-1, 9mm caliber handgun, was purchased by KeAmbra NUNN (hereinafter "NUNN") from a firearms dealer in East Peoria, Illinois, on December 29, 2017.

6.    On Thursday, August 9, 2018, Your Affiant spoke to NUNN on the phone.  Your Affiant advised NUNN that a firearm she had previously purchased had been recovered by law enforcement.  Your Affiant asked NUNN if she would be willing to speak to law enforcement about the firearm and NUNN stated that she would.

7.    On Wednesday, August 22, 2018, Your Affiant and ATF Task Force Officer (hereinafter "TFO") Matt Ray interviewed NUNN in a public parking lot in Peoria, Illinois.  Your Affiant advised NUNN that I was an ATF agent and showed NUNN official credentials issued to Your Affiant by the ATF.  NUNN was then questioned about a firearm that she had previously purchased that was

2

now possessed by law enforcement and about her relationship to Terrill

RICKMON.

8.      During the interview, NUNN stated that she did not know that her

firearm was missing from her bedroom closet until she spoke to Your Affiant on

the phone.  NUNN stated that she had hosted a party at her residence

approximately four months prior, and that an anonymous friend of hers had

recently told her that someone named "Tamari" had stolen her firearm during

the party. NUNN was asked if she knew Timaari Walker and she said no.

NUNN was asked if she knew Denisha Stone and she said that she knew her a

little bit, but that they were not close.  NUNN was asked if she knew Terrill

RICKMON, and she said that she knew him a little bit, but that they were not

close. NUNN was asked if she knew that RICKMON had been arrested, and she

said that she did not know and that she was not close enough to RICKMON to

know anything like that. NUNN was informed that RICKMON was arrested for

possessing her firearm on July 29, 2018.  NUNN was asked if she knew that

RICKMON had been arrested and she said no.  NUNN was asked if she had

spoken to RICKMON on the phone since his arrest on July 29th and she said no.

9.      Your Affiant reviewed some of the recorded jail calls made by

RICKMON.  The review indicated that from the time of his arrest on July 29, 2018

until the time that NUNN was interviewed by Your Affiant on August 22, 2018,

RICKMON made 41 calls to NUNN at her cell phone number (309-642-9088)
utilizing his PIN # assigned by the Peoria County Jail.  Additionally, RICKMON
spoke to NUNN multiple times during the same time frame utilizing other
inmate PINs and also by utilizing 3-way phone calls.  RICKMON spoke to
NUNN on August 22, 2018, less than one hour before she was interviewed by
Your Affiant.  RICKMON continued to communicate with NUNN on regular
basis for the remainder of the review period ending on August 27, 2018.

10.    On Sunday, July 29, 2018, RICKMON called NUNN and they
discussed the fact that RICKMON had been shot and arrested for possessing a
firearm.  RICKMON told NUNN that he was in a car with someone named
"Tareeka".  NUNN corrected RICKMON, stating that RICKMON was actually in
a car with "Timaari and Denisha".

11.    On Wednesday, August 8, 2018, RICKMON called NUNN and
NUNN told RICKMON that Your Affiant and TFO Ray had gone to her house to
talk to her.  NUNN referred to Your Affiant and TFO Ray as RICKMON's
"Cousin Pig" in an attempt to talk in code.  NUNN told RICKMON that
Facebook was the reason that she can't say that she doesn't know RICKMON.
RICKMON agreed that NUNN can't deny knowing him.  RICKMON told
NUNN that she should say that they only communicate and that they don't go to

each other's houses.  NUNN told RICKMON that she knows what to say and
what to do and that she has the situation under control.

12.     Later on the same day, RICKMON called NUNN again on a
recorded jail call.  RICKMON told NUNN that when she talked to his cousin
again, she should tell them that those clothes have been missing since before
RICKMON came home (based upon the context of the conversation and the
investigation, Your Affiant verily believes that RICKMON and NUNN are
referring to the firearm purchased by NUNN as "clothes" to mask the nature of
their conversation).  NUNN asked why she would say that if she's acting like she
doesn't even know where the person's clothes were ever at.  RICKMON said that
would be ok too.  A few minutes later in the conversation, RICKMON told
NUNN to tell them that it was the other way.  NUNN told RICKMON that she
didn't want to say that, and RICKMON became agitated with NUNN and told
her she could do it her way.

13.     On Wednesday, August 22, 2018, RICKMON called a male utilizing
someone else's phone PIN # and asked that male to do a 3-way phone call with
another male.  Once the second male joined the call, he proceeded to inform
RICKMON what had happened during NUNN's interview with Your Affiant
and TFO Ray earlier on that same date.  After hearing a summary of NUNN's
interview, RICKMON became agitated and said that NUNN put a spin on it and

that she was the dumbest.  RICKMON continued to say there was supposed to

be a whole different spin on it and now he might have to do time.  RICKMON

stated that he had told NUNN 50 times to ask for a lawyer and to not speak to

law enforcement.

14.    RICKMON and NUNN had multiple conversations throughout the

review period where they discussed being in love and wanting to have children

together.

15.    Based on the aforementioned facts, Your Affiant believes that

probable cause exists that KeAmbra NUNN knowingly and willfully made

materially false statements and representations about her relationship and

communication with Terrill RICKMON in order to divert suspicion away from

Terrill RICKMON in an investigation and to impede the investigation of firearm

possession by RICKMON.

s/Kevin D Brown

Kevin D. Brown, Special Agent
Bureau of Alcohol, Tobacco,
Firearms & Explosives

Sworn and subscribed to before me this 27th day of September 2018:

s/Jonathan E Hawley

Jonathan E. Hawley
United States Magistrate Judge
Peoria, Illinois